Yes. May it please the Court, my name is Adrienne Anderson. On behalf of Appellants, Parker Stewart. I'm NDA. I'm also doing business as T-Launch. So, what has, I guess, developed during the... It looks like you might want to raise the lectern a little bit. Yeah, okay. Sorry about that. There's a button on the side that'll do it. I think we got it. Can you hear me? Wait, the whole platform will go up. Oh, I think I'm good. You're all right. I'm good? Speak into it. Okay, I'm sorry, Your Honor. So, our basic argument is Parker Stewart is the one that is injured. He is the one that holds the federal RICO standing as a starter. While he was a part of the firm, while he was a part of the company, that still continues to this day, which has been subsequently founded, that there is now another company that he would potentially have ownership in. So, whether we're talking derivative or direct here, there is standing for him to have RICO. And, you know, the one case that we have, you know, is the medical marijuana case versus Horn, that states, you know, that this is a closely held corporation with two people. Two people. Mr. Parker, or Mr. Stewart, sorry. Mr. Stewart started the company, got his second cousin involved, and he is the only one that is harmed in this. He clearly was lied to about the valuation of the company. He was provided, you know, false information. And it was not just known before the company was dissolved, and apparently it wasn't dissolved. It was purchased and or created a new company that he would still have interest in. Wasn't the injury, though, I understand you're saying it's directed at your client, but wasn't the injury the diminution of the value of the corporation, the company? No. I mean, and that still goes on. I mean, the fraud goes directly to him. The fraud goes directly to him. It started from the beginning, and it still continues to this day. But the damage was done to the corporations, the underlying entities. The only other, the perpetrator was your owner. The only, this is, we're not dealing with a company that has, you know, 7,000 shareholders here. Medical Marijuana specifically has an exception to this matter, that he is the only one harmed and is the one that is able to collect and specific facts have developed since. But isn't he only harmed by a diminution in the value of these entities that he no longer owns? Well, no. So there were entities that were created that were unknown to him, monies that were siphoned out, unknown to him, and, you know, especially Medical Marijuana, it gives him the exception to that he is harmed of millions and millions and millions of dollars. And there was no way that my client, who started this company, now I believe it was incorporated under his cousin who came in, would have ever sold it or have ever have entered into the trial agreement. That was not natural. We don't deny that. If these lies were discovered before then, and the lies continue to go on. So, you know, he is, has specific... Would the state law remedies remain available in state court? They would, but I think the RICO remedies, I would say still keep it in federal court. Well, you know what the federal courts think of RICO generally. I'm doing your honor. I mean, you're riding your... I don't know if it's the weakest or the most questionable horse. Why not go to state court? Well, we also have the bank here too. We've got so many parties involved. I think banks are subject to state law. I correct your honor, but I believe in the district that we are in, in South Dakota, that this is now the best cause of action and the proper court to be in. But if you lose on RICO standing, now the court declined to exercise supplemental jurisdiction over the state law claims. That's a discretionary matter. We're not going to reverse that. You just go to state court. Correct your honor. That is a possibility, but I believe... I think it's more than a possibility. It may be the only possibility. Well, I believe we still have, my client still has standing under 1964 to be in federal court here. I don't even know if that's... I do not disagree they have state law remedies available. Correct. In state court. Correct. That would be supplemental jurisdiction within the federal court. In state court it is, right? Correct, but can be supplemental jurisdiction within the federal court. You never reverse a district court for declining to exercise supplemental jurisdiction if it properly dismissed the federal claim. I can almost say that categorically. Correct. I understand what you're saying, your honor. But I believe that there is still a federal RICO claim here that continues to this day and has still continued on and on. Between with the bank from the beginning to the additional fraudulent corporations that were incorporated behind my client's back, behind the buyout of the corporation, that everything still continues to this day and that there is proper federal jurisdiction. And because there are so many other defendants, I can reserve the rest of my time for reply. Wait a minute, you're reserving time for what? To raise other issues? Well, no, not to raise other issues. You argue it all right now or you don't get the second chance? Correct, but for a reply because there are so many defendants. Okay, we'll see. Yes, because I believe we have three or four attorneys behind me that I will need to, you know, assume additional responses to. All right, thank you. Thank you. Mr. Bruning. May it please the Court, my name is Corey Bruning. I'm appearing on behalf of the defendants identified in the briefs as the HAMSI defendants. From our view, this issue can be disposed of several different ways. I'm only going to touch on a very brief one because my co-counsel needs time to talk as well. The standing in this one is an issue. It's undisputed that Parker sold his interests. You're talking RICO standing, Article III standing. What are you talking about? I suppose technically this would be prudential standing. That's statutory. Okay, so RICO is a statute. Broad is common law and often statutory. Come on. Well, Your Honor, I believe. Briefs just make a mess of this case, frankly. Yes, Your Honor. The part I'm talking about and what I'd like to draw the Court's attention to is the actual buyout agreement itself. In the buyout agreement, which is in 205 to 207 of the record, it specifically says that Parker sold all of his interests in Iam Indy back to Iam Indy. As a result, in order to unwind that contract, Parker would have to sue Iam Indy, not list him as a co-plaintiff. In that buyout agreement, there's a broad waiver. Oh, no, no. Wait a minute. Wait a minute. A shareholder can. . . All right. I think you're just wrong what you said there. Go ahead. Well, in the buyout agreement, there is a broad waiver and indemnification of many of the claims, and those that weren't were specifically included in the sale to which he was paid for. It's important to note that Parker did have access to the financial data months in advance of the sale. By June, before the end of September sale, he was advised by both sets of his prior counsel that he had the opportunity to seek a forensic audit, and Chris Hamsey specifically responded in writing that he had no objection to that. He chose not to. Well, release is completely different than standing, isn't it? Well, in the sense that Federal Rule FRCP 17 says we look to State law for the standing issue, all of his injuries are derivative. And under South Dakota Codified Law 47. . . That's a little different than saying he released these claims when he sold the company, isn't it? Well, it is, but the fact that he no longer owns the company. . . Okay, that's different. The fact that he no longer owns it means that he then can't meet the statutory requirements under South Dakota Codified Law to bring this suit. The Court's earlier question about whether the injuries were derivative, they are all derivative. Every single one of his alleged injuries are because he believes IM&D has less money or less value than it otherwise should have. Stewart voluntarily sold his interests with the advice of counsel after receiving financial records, after being told he could get forensic accounting, he chose not to, and with a broad release and indemnification clause. He now asked the Court to let him sue for alleged injuries that even if true, belonged to the company, not him. The District Court got this right. We'd respectfully ask this Court to affirm. If this Court has no further questions, I'll reserve the rest of my time for my co-counsel, or yield it to them, I should say. Good morning, Your Honors. Steve Landon on behalf of Defendants Appellees, Plains Commerce Bank, and Chris Marbus, an employee of Plains Commerce Bank. Your Honors, the District Court properly dismissed, granted the motions to dismiss, for basically three reasons. First, the Court properly found that Parker Stewart, as a plaintiff, did not have the capacity to sue because, as Mr. Bruner just mentioned, he had already sold his interest in the company. He was no longer a member of the LLC, IM&D, and as a result, the injuries were not to him. Under South Dakota law, which is where the Court properly looked under Rule 17, in order to maintain an action for a limited liability company in South Dakota, the person bringing the lawsuit must be a member at the time the action is commenced and must remain a member throughout the duration of the action. It's undisputed. In fact, it's pled specifically in Plains' complaint that Mr. Parker was no longer a member of IM&D, the LLC, and therefore could not maintain that action. Second reason is because the District Court properly found that Mr. Stewart had also failed to allege a direct injury to himself, that the injuries that were alleged he suffered, as the Court has already noted, a diminution of value of the company, diminution of income to the company, as all part of the scheme that he's alleged. Now, what's also important about that is there's a third reason why the case was properly dismissed, and this was briefed below, it was argued below, the Court didn't reach it, but you're all aware of the RICO cases that end up always naming a bank, an accounting firm, a law firm, another service vendor. This Court has held numerous times, a banker does not become a racketeer by acting like a banker. Well, in this case, wasn't there potentially a breach of fiduciary duty with the violation, the alleged violation by one of your clients of this agreement, of this third party agreement? Sure. Two things to that, Your Honor. First of all, remember the customer that Plains Commerce had was IM&D, the LLC. So to the extent there's a claim, we're right back to the first issue, which is IM&D hasn't brought that claim, and Mr. Stewart can't bring it on behalf of an LLC he's no longer a member of. Secondly, I don't know that this was briefed very much or even argued below. The case in South Dakota is that a bank does not necessarily owe a fiduciary duty outside of the terms of the contract that it signed with a business client because they haven't trusted the bank to basically run their business for them. So with respect to the fiduciary duty claim, which is a State law claim, that's not a predicate racketeering event. And that's, you know, Judge Lange in the district court hearing essentially asked Plains Counsel, Appellant's Counsel, what separately indictable action did Plains Commerce Bank take? Plains Counsel couldn't answer the question because there isn't one. Now, they've alleged that there was wire fraud and mail fraud with respect to the Hamze defendants, but not with respect to Plains Commerce Bank. Your Honor, at the end, I guess what I would refer you back to is Plaintiff's own complaint. In Plaintiff's complaint, they allege the scheme. And, of course, the Court has read the complaint and seen the detailed factual allegations about the scheme. We would direct the Court to see that the scheme is between Chris and Nick Hamze against I.M. Mindy and at times against Parker Stewart. But the allegations with respect to Plains Commerce Bank, back to a bank doesn't become a racketeer by acting like a bank, those allegations are, and I quote, paragraph 21, Mr. Marbus for Plains Commerce Bank routinely breached the third party agreement, breached the agreement. In addition, every payment during Parker's absence was unilaterally validated, excuse me, was unilaterally executed by Chris and blindly validated by Marbus. Those are allegations potentially of negligence and certainly a breach of contract, which in the proper forum would be disputed by Plains Commerce Bank. What they don't do, though, is allege an enterprise and a pattern of racketeering activity by the bank. And that's why the RICO case claims whether you reach them at standing or whether you get to them on the merits, based upon the pleadings, there's been no RICO claims properly alleged in this complaint. And the Court was also, well, I don't think this is properly reviewable, but to the extent the Court denied the right to amend the complaint, all the plaintiffs sought to do was add three general paragraphs that lump all the defendants together. Again, it's subtle law in the Eighth Circuit that in order to keep parties in a RICO cause of action, you have to specifically allege all of the required elements for each defendant. You don't get to do shotgun pleading and say all the defendants did this. This complaint specifically alleges that the Hamsey cousins had a scheme, that they acted on that scheme. All it alleges has to Plains Commerce Bank is that it was a bank and potentially that it breached a contract. That's not a racketeering predicate cause of action. As a result, Plains Commerce Bank asks the Court to affirm the district court's granting of the motions to dismiss. Thank you. Good morning, Your Honor. May it please the Court. Laura Lamontagne for Appellee District Photo. District Photo does not belong in this case. It is a District of Columbia corporation that was founded in 1949 by the Cohen family. It purchased assets from I. Mindy in 2024, the year after Parker Stewart voluntarily sold his interest. District Photo is, as Mr. Stewart's own complaint acknowledges, a competitor of an enterprise participant, a competitor and a supplier. And if you look at the appendix at page 182, there's a quote that discusses how we have lost, talking about I. Mindy, numerous customers to manufacturers like John Doe, District Photo, and WW and Catalyst, as they have developed superior technology. So my colleagues already went over the two issues with standing. He's not a member of this LLC. He needs to be a member if he's going to sue in its name. And two, the fact that all these injuries are derivative, and the injury flows through the corporation. It's not to him directly. But moving those issues aside, for District Photo, his whole allegation is that there is successor liability. And under the rule in Hamaker, a corporation which purchases assets does not succeed to the liability of the entity that is acquired. There are four narrow exceptions, but none of those are pled adequately. The complaint relies on conclusory assertions, and the complaint says about 40 times, the brief, about 40 times, the well-pled complaint, the well-pled complaint. But there's a complete absence of any factual allegations as to District Photo. The court didn't reach the issue of the failure to state a claim as to District Photo, but this court can also affirm on that basis. For Erico, he must plead every element and all of the parties involved. There's no mention of any employee from District Photo, not its CEO, not its   No one from District Photo is ever mentioned. There are no predicate acts alleged to District Photo. The complaint says that the last predicate act was the buyout agreement between I. Mundy and Parker Stewart. That agreement took place the year before District Photo purchased the assets. There are zero allegations that District Photo participated in this enterprise. There's no who, what, when, where, or how, or any of the requirements that are necessary to establish fraud under Rule 9b. And again, nobody from District Photo is mentioned once in the complaint. So they're relying on shotgun pleading and trying to bring in this entity that has absolutely no relationship to the case, aside from the fact that it's a supplier in the same industry and that it purchased assets, and to lay responsibility where there absolutely is none. They need to plead more than just the conclusory allegations of, oh, they're the successor company, and therefore they're liable. That's not how the law works. And so beyond the fact that there is absolutely no standing, that the injury is derivative, there's a complete failure to state a claim. My position is that District Photo doesn't belong here, that it's been wrapped up in a dispute it has no relationship to, and that the district court was absolutely correct in dismissing this complaint. And as was noted earlier, the complaint was dismissed without prejudice. There are state law remedies available. If they want to try and succeed in action to rescind the buyout agreement, they have that right. But at least as to District Photo, there's no reason to include them. If there are no further questions, I would just respectfully ask that you affirm the district court's order. Thank you, sir.  All right. To address counsel's points going forward, as to our ability to get an accounting, there was in the agreement it was supposed to be split. They refused to pay for it. They refused to pay for the audit. And additionally, there was no knowledge on my client's part of any of these fraudulent corporations that were siphoning money out of the company, which were split. You know, everything was split there. As to the bank not being involved in the fraud, they were a fiduciary, as alleged. They insisted on then signing the third-party agreement. Once my client finally realized that it was not being held, they were completely involved in the fraud. To say that they were not, you know. What made them a fiduciary? Though they had under the ability, I mean, they had under the agreement. They had to hold the funds. They were holding the funds. I mean, they agreed to that. You know, and as to, you know, District Photo not being involved or specifically pled, there were, I believe, over 23,000 transactions with District Photo before the buyout. We don't know. We have no discovery. This was dismissed at a 12B6 phase, okay? So that's just addressing the facts. I don't know, and no one knows, and this cannot be dismissed at 12B6 phase. You know, this is a RICO federal question, honestly. If it's not governed under South Dakota law, that the federal law is definitely going to, you know, override. You know, Parker, as, you know, a 50% owner under, you know, Federal Rule 17A, on behalf of the company at all times, relevant to the complaint, was the owner, who was the only one hurt by this RICO enterprise. We have no information on this. South Dakota law does not control, does not preempt federal RICO spending under 17B3. We've got Curtis v. Lumber as well cited. Again, medical marijuana. You know, all, you know, what we're asking is that this be remanded back down to district court. So for actual discovery, because this is, you know, this is what's needed. Okay? I don't know if you have any other further questions. That's just what we're asking. Okay? Very good. Thank you. Case has been thoroughly brief. Lots of issues that are not typical, so take them under advisement. Take all cases under advisement.